IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTWAINE L. JONES, | ) | Case No. 3:16 CV 849 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MARK HOOKS, Warden, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **<u>REPORT AND RECOMMENDATION</u>** |

## I.     Introduction

Petitioner Antwaine L. Jones seeks a writ of habeas corpus under 28 U.S.C. § 2254, based on his challenge to the constitutionality of his convictions and sentences in *State v. Jones*, Case No. CR2012-2661 (Lucas County, Ohio). ECF Doc. No. 1. Warden Mark Hooks,[1] the respondent, filed a return of writ. ECF Doc. No. 7. And Jones has filed a traverse. ECF Doc. No. 12.

The matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Jones's petition or other case-dispositive motions. Because each of Jones' claims is procedurally defaulted, not cognizable on federal habeas review, and/or lacks merit, I recommend that the Court DISMISS Jones' petition in its entirety.

---

[1] Mark Hooks is Warden of the Ross Correctional Institution in Chillicothe, Ohio, where Jones is incarcerated. ECF Doc. No. 7 at Page ID# 133.

## II.      Factual Background

Ohio's Sixth District Court of Appeals set forth the following facts underlying Jones' convictions:

> {¶ 2} This case arises from a shooting that occurred on August 9, 2012, at the Moody Manor apartments in Toledo, Ohio. On that night, Naomi Reed was inside her apartment with several others including her great-grandchildren, K.H. and L.H. In the moments before the shooting, K.H. and L.H. were asleep on the floor of the apartment in front of an air conditioner.

> {¶ 3} Awoken by gunshots, one-year-old K.H. sat up and was shot in the head. Two-year-old L.H. was shot in the chest and abdomen. The children were rushed to St. Vincent's hospital. K.H. died as the result of her wounds. L.H. was treated and released several days later.

> {¶ 4} Two Moody Manor residents, Cassandra Wells and Demetria Johnson, along with Wells' boyfriend, Brandon Lino, witnessed two men flee the scene and make their way into a moving minivan. One of the men was wearing a red and white hat, a white T-shirt, black jogging pants, and a black hoodie. The other man was wearing a red T-shirt underneath a black hoodie.

> {¶ 5} Johnson phoned 911. Several Toledo police officers responded to the call. When Officer Paul Marchyok arrived, one of the children had already been rushed to the hospital. Moments later, the second child received medical attention from emergency medical services, on scene. When Marchyok began to secure the crime scene, he discovered shell casings outside Reed's apartment. He then notified his lieutenant of the incident and requested access to the Moody Manor camera system in an effort to determine the number of suspects involved.

> {¶ 6} Approximately fifteen minutes after the shooting, Toledo police Detective Jason Lenhardt arrived on the scene. By this time, the weather had taken a turn for the worse and Lenhardt was forced to conduct his investigation under heavy rainfall. While the rainfall did hamper Lenhardt's investigation, he was nonetheless able to recover a bullet from an adjacent apartment, as well as a 9 mm cartridge, fragments of copper jacketing, and multiple shell casings, both 9 mm and .40 caliber. Eventually, two additional 9 mm casings and one .40 caliber casing were retrieved from the scene.

{¶ 7} While Lenhardt was conducting his investigation outdoors, Detective Scott Smith focused on the interior of Reed's apartment. As Smith made his way through the apartment, he discovered several more bullets and shell casings.

{¶ 8} Later, officers investigated the van that was allegedly used as a getaway vehicle. Inside the van, they located a red and black Chicago Bulls hat, a dark blue hoodie, a black hoodie, and traffic citations previously issued to Keshawn Jennings. Upon execution of a search warrant at Jennings' house, officers recovered a black hooded sweatshirt and a pair of black sweatpants. A red T-shirt was seized from Jennings after he was interviewed by detectives.

{¶ 9} In time, Toledo police determined that appellant was one of the men involved in the shooting.

*State v. Jones*, 2015-Ohio-629, ¶¶ 2-9.

These facts "shall be presumed to be correct," unless Jones rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. Relevant State Procedural History

### A. Trial Court

On October 10, 2012, a Lucas County Grand Jury indicted Jones on eleven counts: one count of aggravated murder, in violation of Ohio Rev. Code § 2903.01(C) and (F) (Count One); one count of murder, in violation of Ohio Rev. Code §§ 2903.02(B) and 2929.02 (Count Two); two counts of attempt to commit aggravated murder, in violation of Ohio Rev. Code §§ 2923.02 and 2903.01(C) and (F) (Counts Three and Five); four counts of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(2) (Counts Four, Six, Eight, and Ten); two counts of attempt to commit murder, in violation of Ohio Rev. Code §§ 2923.02 and 2903.02 (Counts Seven and Nine); and one count of improper discharging of a gun into a habitation, in violation of Ohio Rev. Code § 2923.161(A)(1) (Count Eleven). ECF Doc. No. 7-1 at Page ID# 192-200. Each

count carried a firearm specification. ECF Doc. No. 7-1 at Page ID# 192-200. The indictment also charged Jones' codefendants, James Moore and Keshawn Jennings, with the same offenses. ECF Doc. No. 7-1 at Page ID# 192-200.

Jones pleaded not guilty to all charges, and a trial was scheduled for December 10, 2012. ECF Doc. No. 7-1 at Page ID# 497. The trial date was continued several times, often at the defendants' requests. *See, e.g.,* ECF Doc. No. 7-1 at Page ID# 507, 509, 515, 520, 524, 525.

On April 30, 2013, Jones filed a motion to sever his trial from that of his codefendants (ECF Doc. No. 7-1 at Page ID# 202-04), which the State opposed (ECF Doc. No. 7-1 at Page ID# 205-06). On May 6, 2013, Jones moved for a change of venue (ECF Doc. No. 7-1 at Page ID# 207-12), which the State also opposed (ECF Doc. No. 7-1 at Page ID# 213-18). The trial court denied Jones' motion to change venue. ECF Doc. No. 8-7 at Page ID# 2344. The court also denied Jones' motion to sever without prejudice after reviewing "sanitized" versions of the codefendants' statements. *See* ECF Doc. No. 8-8 at Page ID# 2357-58. On June 20, 2013, Jones withdrew his motion to sever. ECF Doc. No. 8-8 at Page ID# 2360. That same day, the State dismissed Counts Three, Five, and Nine and the attached firearm specifications. ECF Doc. No. 7-1 at Page ID# 221.

Eventually, Moore pleaded of guilty to involuntary manslaughter in exchange for his testimony at his codefendants' trial and an agreed sentence of three years. *Jones*, 2015-Ohio-629, ¶ 10.

Jones' and Jennings' jury trial began on June 24, 2013. *Id*. at ¶ 11. Many witnesses testified at the trial, including Jones' former codefendant, Moore. *Id*. According to the Ohio Court of Appeals, Moore testified that he, Jones, and Jennings were members of the Bloods street gang. *Id*. at ¶ 12. Moore acknowledged that he drove the van away from the crime scene.

*Id.* He also identified Jones as the one responsible for the shooting, which was intended for a member of the rival Crips gang. *Id.*

On July 5, 2013, the jury returned a guilty verdict on all counts. ECF Doc. No. 7-1 at Page ID# 222. On July 23, 2013, the trial court conducted a sentencing hearing. ECF Doc. No. 7-1 at Page ID# 232. The court first merged for purposes of sentencing the aggravated murder and murder charges and the charge of improperly discharging a firearm into a habitation with all the remaining counts. ECF Doc. No. at Page ID# 234. The court then imposed sentences of: thirty years' to life imprisonment for the aggravated murder charge with an additional year, to be served consecutively, for the attached firearm specification; eleven years' imprisonment for each of the two attempted murder charges with an additional year, to be served consecutively, for the attached firearm specifications; and eight years' imprisonment for each of the four felonious assault charges with an additional year, to be served consecutively, for the attached firearm specifications. ECF Doc. No. 7-1 at Page ID# 234-35. The aggravated murder charge and one of the felonious assault charges with the attached firearm specifications were to be served consecutively. ECF Doc. No. 7-1 at Page ID# 236. The remaining charges were to be served concurrently with each other and concurrently with the murder and felonious assault counts. ECF Doc. No. 7-1 at Page ID# 236. The trial court imposed an aggregate sentence of life in prison with parole eligibility after forty years**.** ECF Doc. No. 7-1 at Page ID# 236. Jones also was ordered to pay "all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as well as authorized by law." ECF Doc. No. 7-1 at Page ID# 237.

## B.    Direct Appeal

Jones, through new counsel, filed a timely notice of appeal in the Ohio Court of Appeals. ECF Doc. No. 7-1 at Page ID# 238-50. Jones' appointed appellate counsel then requested leave

to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), which provided that counsel may request permission to withdraw if she determines that an appeal would be frivolous. *Jones*, 2015-Ohio-629, ¶ 15.

Jones filed his own *pro se* appellate brief, presenting twelve assignments of error:

1. The trial court erred to the prejudice of Mr. Jones by failing to excuse a sleeping juror in violation of his right to a jury and his right to due process of law as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

2. Trial counsel rendered ineffective assistance of counsel to Mr. Jones by failing to object to the sleeping juror's presence on the jury in violation of his right to counsel and his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

3. The trial court erred to the prejudice of Mr. Jones when it ordered him to pay unspecified costs, including court appointed fees, without first determing [*sic*] the ability to pay those costs.

4. Appellant's convictions were based upon insufficient evidence presented at trial.

5. Appellant Jones were [*sic*] entitled to a Rule 29 motion that was improperly overruled because the State has not shown the transferred intent that is required, and because Appellant was arrested without probable cause or warrant for indictment.

6. Appellant's convictions were against the manifest weight of the evidence.

7. The trial court erred to the prejudice of Mr. Jones by ordering consecutive sentences and by failing to merge all counts as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

8. The Appellant was denied due process of law and a fair trial due to prosecutorial misconduct in violation of Article 1, Section[s] 2, 10, and 16

of the Ohio Constitution[, and the] 5th, 6th, and 14th Amendments [of the] U.S. Constitution.

9.     The trial court errored [*sic*] to the prejudice of Appellant by admitting prejured [*sic*] testimony [of] government witness' [*sic*] and star witness J.T. Moore in violation of Article 1, 2, 10, and 16 of the Ohio Constitution[, and the] 6th[] and 14th Amendments, U.S. Constitution.

10.     The trial court erred to the prejudice of Mr. Jones when it denied a defense motion to have a complete copy of the prosecutor's file turned over to the court and sealed for appellate review in violation of his right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable protions [*sic*] of the Ohio Constitution.

11.     Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

12.     The trial court erred in failing to grant Appellant's motion [for] severance, change of venue and ineffective assistance of counsel.

ECF Doc. No. 7-1 at Page ID# 256-58 (capitalization altered).

On February 20, 2015, the Ohio Court of Appeals affirmed in part, and reversed in part, the trial court judgment. ECF Doc. No. 7-1 at Page ID# 345-80; *Jones*, 2015-Ohio-629. The state appellate court first found Jones' appellate counsel had met the requirements set forth in *Anders*. *Jones*, 2015-Ohio-629, ¶ 17. Addressing Jones' assignments of error in his *pro se* brief, the count then vacated the portion of the trial court's sentencing order requiring Jones to pay the costs of his confinement and appointed counsel, but affirmed the judgment in all other respects. ECF Doc. No. 7-1 at Page ID# 380; *Jones*, 2015-Ohio-629, ¶ 104.

Jones filed a timely *pro-se* appeal to the Ohio Supreme Court. ECF Doc. No. 7-1 at Page ID# 381-82. His memorandum in support of jurisdiction asserted eleven propositions of law:

1. The trial court erred to the prejudice of Mr. Jones by failing to excuse a sleeping juror in violation of his right to a jury and his right to due process of law as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable [portions of the Ohio Constitution.]

2. Trial counsel rendered ineffective assistance of counsel to Mr. Jones by failing to object to the sleeping juror's presence on the jury in violation of his right to counsel [and] to a fair and reliable trial and his due process rights under the $5^{th,}$ 6th, and 14th Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

3. Appellant's convictions were based upon insufficient evidence presented at trial.

4. Appellant Jones were [*sic*] entitled to a Rule 29 motion that was improperly overruled because the State has not shown the transferred intent that it required, and because Appellant was arrested without probable cause or warrant for indictment.

5. Appellant's convictions were against the manifest weight of the evidence.

6. The trial court erred to the prejudice of Mr. Jones by ordering consecutive sentences and by failing to merge all counts as allied offenses in violation of his right to due process as guaranteed by the 5th, $6^{th,}$ and 14th Amendments to the United States Constitution and the Ohio Constitution.

7. Mr. Jones was denied due process of law and a fair trial due to prosecutorial misconduct in violation of Articel [*sic*] 1, Section[s] 2, 10, and 16 of the Ohio Constitution[,] and [the] 5th, 6th, and 14th Amendments of the U.S. Constitution.

8. The trial court errored [*sic*] to the prejudice of Appellant by admitting prejured [*sic*] stestimony [*sic*] [from the] State's witness and star witness J.T. Moore, in violation of Article[s] 1, 2, 10, and 16 of the Ohio Constitution[, and the 6th and 14th]Amendments of the U.S. Constitution.

9. The trial court erred to the prejudice of Mr. Jones when it denied a defense motion to have a complete copy of the prosecutor's file turned over to the court and sealed for appellate review in violation of his right to due process

as guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

10.    Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his right[s] under the 5th, 6th, and 14th Amendment[s] to the United States Constitution and the corresponding provisions of the Ohio Constitution.

11.    Whether the trial court erred in failing to grant Appellant's motion [for] severance, change of venue and ineffective assistance of counsel.

ECF Doc. No. 7-1 at Page ID# 384-85 (capitalization altered).

    The Ohio Supreme Court declined to accept jurisdiction of the appeal on June 24, 2015.

ECF Doc. No. 7-1 at Page ID# 451.

## C.    Application to Reopen Direct Appeal

    Meanwhile, on May 15, 2015, Jones, acting *pro se*, filed in the state appellate court a

timely application to reopen his direct appeal under Ohio Appellate Rule 26(B).  ECF Doc. No.

7-1 at Page ID# 452-79.  Jones asserted that he was denied the effective assistance of appellate

counsel for failing to raise on direct appeal the following two assignments of error:

1.    It is ineffective assistance of counsel for either trial or appellate counsel to fail to object or to challenge a trial court to ascertain whether there was an abuse of discretion in the process pertaining to Juror No. 5 non precautionary measure regarding note taking during trial after observed impartiality and failed to implement a controlled procedure.

2.    It is ineffective assistance of counsel for appellate counsel to fail to challenge whether there was plain error that resulted in manifest injustice when defense did not object to lack of note taking instructions on recklessness occasions "regarding Juror No. 5 jury duites [*sic*]."

ECF Doc. No. 7-1 at Page ID# 455, 459 (capitalization altered).

    On June 23, 2015, the state appellate court denied Jones leave to reopen his direct appeal,

finding it meritless.  ECF Doc. No. 7-1 at Page ID# 487-90.  Nothing in the Ohio Supreme

Court's docket indicates that Jones appealed that judgment. *See*

http://www.supremecourt.ohio.gov/Clerk/ecms/#/search.

## IV. Federal Habeas Corpus Petition

Jones filed his *pro se* petition for writ of habeas corpus in this Court on April 11, 2016.

ECF Doc. No. 1. He asserts eleven grounds for relief:

1. Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when a sleeping juror was not excuse[d] by [the] court [in] violation of [his] right to a jury and right to due process a prejudice to Mr. Jones.

2. Mr. Jones's 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when the counsel rendered ineffective assistance of counsel by failing to object to the sleeping juror's presence on the jury [in] violation of right to counsel and due process.

3. Mr. Jones's 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when Mr. Jones was convicted upon insufficient evidence at trial.

4. Mr. Jones's 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when [his] Rule 29 [motion] was improperly overruled because the State fail[ed] to show transferred intent that was required, and was arrested without probable cause or warrant for indictment.

5. Mr. Jones's 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when convictions were against the manifest weight of the evidence.

6. Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when [the trial court] fail[ed] to merge all counts as allied offenses as guaranteed.

7. Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated due to prosecutorial misconduct.

8. Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when [he was] prejudice[d] by [the trial court]

admitting prejured [*sic*] testimony from [the] State's witness and star witness J.T. Moore.

9.     Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when [the trial court] denied [his] motion to have a complete copy of [the] prosecutor's file turned over to the court and sealed for appellate review.

10.    Mr. Jones's 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when cumlative [*sic*] errors deprive[d] him [of] a fair trial.

11.    Mr. Jone's [*sic*] 5th, 6th, and 14th United States Amendments of the Constitution [were] violated when [the trial court] fail[ed] to grant [his] motion[s] [for] severance [and] a change of venue.

ECF Doc. No. 1-2 at Page ID# 11-14 (capitalization altered).  Jones filed a "Supplement" to his petition on June 17, 2016.  ECF Doc. No. 5.[2]

On September 19, 2016, Respondent filed a return of writ.  ECF Doc. No. 7.  On January 9, 2017, Jones filed a traverse.  ECF Doc. No. 12.[3]

## V.     Standards of Review

### A.     AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs Jones' petition because he filed it after the Act's 1996 effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal

---

[2] The "Supplement" does not differ from the original petition in any material way.
[3] Jones filed a duplicate traverse that same day.  ECF Doc. No. 13.

system:  State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  "When a federal claim has been presented to a state court and the state court has denied relief, it is presumed that the claim was adjudicated "on the merits" in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  This is true even when the state court provided little or no reasoning at all for its decision.  *Id.*

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the United States Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision

need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court

adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion

requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[4]

---

[4] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule. It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

---

decisions on the procedural rule. Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[5]

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### C.     Cognizability

To the extent that claims asserted in a federal habeas petition allege purely state-law violations, they are not cognizable on federal habeas review and must be dismissed on that basis

---

[5] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

"(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

unless the state court ruling violates a fundamental federal constitutional right. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

However, state-court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).

Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

## VI. Analysis

### A. Ground One: *Trial-Court Error / Failing to Dismiss Sleeping Juror*

Jones' first ground for relief asserts that the trial court erred by failing to dismiss a juror who was asleep during trial proceedings. ECF Doc. No. 1-2 at Page ID# 11. Respondent correctly contends this claim is procedurally defaulted. ECF Doc. No. 7 at Page ID# 144-48.

Jones raised this claim in state court on direct appeal. *See* ECF Doc. No. 7-1 at Page ID# 256, 384. The last state court to address the claim, the state appellate court,[6] reasoned:

{¶ 20} During the trial, the court became aware that juror No. 5 was having a hard time staying awake. At one point, defense counsel asked for a sidebar conference and informed the trial judge of the situation. The court decided to monitor the juror, and the trial continued. Additionally, the state alerted the court that it was concerned that an alternate juror had fallen asleep during its direct examination of Lenhardt. Once again, the court informed the parties that it would monitor the jury. The court also indicated that it would provide an instruction if the situation continued.

{¶ 21} On the next day, defense counsel requested another sidebar conference, suspecting juror No. 5 of sleeping during the trial. At the beginning of the conference, the court stated: "I know that you guys think that juror no. 5 is sleeping because his head's down. * * * He's taking notes. I can see him from up higher. * * * I've been watching him and he's been—his head is down, his eyes are down, but I can see from the bench here he's writing."

{¶ 22} On the second to last day of trial, the court individually voir dired juror No. 5. The court was prompted to voir dire juror No. 5 when it became apparent that juror No. 5 had fallen asleep during the showing of a lengthy video exhibit. In questioning juror No. 5, the following dialogue took place:

---

[6] Jones' federal habeas claims are virtually identical to the claims he raised in state courts on direct appeal. *Compare* ECF Doc. No. 1-2 at PageID# 11-14 *with* ECF Doc. No. 7-1 at PageID# 256-58, 384-85. The Ohio Court of Appeals addressed each of Jones' claims, and the Ohio Supreme Court declined to review them. *See* ECF Doc. No. 7-1 at PageID# 345-80, 451; *Jones*, 2015-Ohio-629.

THE COURT: Just have a seat there, sir. Okay. The record should reflect that we're outside the presence of the jury. We're here with juror no. 5. You having a little trouble staying awake?

JUROR NO. 5: Not really.

THE COURT: I've been watching and it seems like you were dozing off earlier when the—when the video was being played here. Is there some—do you feel like—have you caught yourself nodding off here?

JUROR NO. 5: I have done that.

* * *

THE COURT: You can—you want to finish sitting on this trial?

JUROR NO. 5: Oh, yes.

THE COURT: Well, we all want you to [too] but if we notice that you're sleeping, we can't have you continue. Obviously if—it's not fair to the defendants, it's not fair to the State here if you do. So I'm going to caution you that if you continue to have this problem—if there's anything we can do, will you let us know?

JUROR NO. 5: I can do that.

THE COURT: And if you continue to have the problem and you don't let us know, then I may have to remove you and seat one of the alternate jurors.

JUROR NO. 5: Okay.

* * *

THE COURT: We're in recess. Before counsel goes, anybody have any objections to the voir dire of that juror?

[DEFENSE COUNSEL]: On behalf of [appellant], no.

{¶ 23} On appeal, appellant argues that the trial court erred in failing to excuse juror No. 5 when it realized that the juror was sleeping during trial. Notably,

appellant's counsel did not object to the trial court's instructions to juror No. 5, nor did counsel move for a mistrial. "If a party fails to express dissatisfaction with the trial court's handling of an issue, the issue is waived in the absence of plain error." *State v. Bunce*, 6th Dist. Lucas No. L–08–1237, 2010–Ohio–3629, ¶ 32, citing *State v. McKnight*, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005–Ohio–6046, ¶ 185. Therefore, plain error is the appropriate standard of review.

{¶ 24} In order to establish plain error, appellant must demonstrate an obvious error that affected substantial rights "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B). An alleged error cannot rise to the level of plain error unless the outcome clearly would have been different if not for the error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶ 25} Here, appellant contends that juror No. 5 was observed falling asleep during testimony related to exhibit No. 37, an aerial photograph of the Moody Manor apartment complex overlaid with a diagram depicting the coverage area of the surveillance system. Appellant asserts that the testimony surrounding exhibit No. 37 formed "a centerpiece of the State's case in chief."

{¶ 26} Upon review, we find no plain error in this case. Contrary to appellant's assertion, we find that the evidence presented during the period that juror No. 5 was allegedly sleeping was not critical to the state's case. Indeed, the trial, which produced almost 1,600 pages of transcript, did not hinge merely on the witnesses' discussion of the surveillance system that was installed at the Moody Manor apartments. Moreover, as noted by the state in its appellate brief, multiple witnesses testified regarding the surveillance system prior to any contention that juror No. 5 was sleeping. Thus, we find that appellant has failed to demonstrate any prejudice in the trial court's failure to replace juror No. 5.

*Jones*, 2015-Ohio-629, ¶¶ 20-26.

Thus, the state appellate court found that Jones waived this claim by failing to either object to the trial court's instructions regarding Juror No. 5 or move for a mistrial; and, further, the trial court committed no plain error in allowing the juror to remain on the jury panel after questioning him.

Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998); *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus. In "exceptional circumstances," however, Ohio courts may examine a claim that is otherwise waived due to the violation of a procedural rule – such as the contemporaneous objection rule – for "plain error," when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, 96, 97 (Ohio 1978); *see also* Ohio R. Crim. P. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Failure to adhere to the "firmly-established" contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted. *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Moreover, "the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue . . . ." *Id.*

Although Jones does not present a cause-and-prejudice argument to excuse this claim's default, he does assert an ineffective-assistance-of-counsel claim based on counsel's failure to object to the sleeping juror as his second ground for federal habeas relief. *See* ECF Doc. No. 1-2 at Page ID# 10. As will be discussed below, however, that claim is meritless and therefore cannot constitute cause sufficient to excuse Jones' procedural default of this claim. Moreover, Jones does not contend or present evidence to support an argument that he is actually innocent such that the default should be excused in order to prevent a manifest injustice.

Jones' first ground for relief, therefore, is procedurally defaulted, and the undersigned recommends that the Court dismiss it.

**B.      Ground Two:** *Ineffective Assistance of Trial Counsel / Failure to Object to Sleeping Juror*

Jones' second ground for relief alleges his trial counsel was ineffective for failing to object to the trial court's decision to permit a juror who allegedly slept during trial proceedings remain on the jury. ECF Doc. No. 1-2 at Page ID# 11. Respondent argues this claim lacks merit. ECF Doc. No. 7 at Page ID# 155-58.

The Ohio Court of Appeals rejected this claim, stating:

{¶ 29} In his second assignment of error, appellant alleges that he received ineffective assistance of counsel as a result of defense counsel's failure to seek replacement of the sleeping juror.

{¶ 30} To support a claim for ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687–688, 694.

{¶ 31} We have already concluded that appellant failed to demonstrate prejudice by showing that the outcome of his trial would have been different without juror No. 5's continued presence on the jury. Consequently, we also find that appellant has failed to meet his burden under the second prong of the *Strickland* test.

*Jones*, 2015-Ohio-629, ¶¶ 29-31.

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963). The Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, the

petitioner must show that he or she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland*, 466 U.S. at 689-90). The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Jones appears to argue that the state court's determination that his trial counsel was not ineffective because he suffered no prejudice from the sleeping juror's continued presence on the jury was unreasonable. He asserts, "given that the evidence against the petitioner was concentrated relative to J.T. Moore, any and all evidence that could potentially show disharmony was entirely germane to the case." ECF Doc. No. 12 at Page ID# 2426. And because the juror was sleeping, Jones explains, he missed "the showing of critical videos that themselves were the subject of fact-finding in that the surveillance system was outdated and choppy . . . ." ECF Doc. No. 12 at Page ID# 2426.

But Jones' general and vague assertion of prejudice does not demonstrate that the outcome of his trial would have been different, and that he would have been acquitted, had Juror No. 5 been removed from the jury. As the state court reasoned, the evidence presented during the period that Juror No. 5 allegedly was sleeping was not critical to the State's case. *Jones*, 2015-Ohio-629, ¶ 26. The state court noted that Jones' lengthy trial, filling nearly 1,600 transcript pages, "did not hinge merely on the witnesses' discussion of the surveillance system

24

that was installed at the Moody Manor apartments." *Id*.  Moreover, it observed, "multiple witnesses testified regarding the surveillance system prior to any contention that juror No. 5 was sleeping." *Id*.

Jones also offers no compelling argument to show that counsel's performance was deficient.  He merely makes the conclusory assertion that "[t]he fact that counsel initially made the court aware of the problem then failed to champion it had no basis in reasonable trial strategy."  ECF Doc. No. 12 at Page ID# 2426.  As Respondent points out, it was objectively reasonable for counsel, once he had raised the issue with the court and the court had examined it, to choose not to pursue further with the court a "frivolous" or "meritless issue."  ECF Doc. No. 7 at Page ID# 158 (citing *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)).  Once alerted to the problem, the trial court monitored Juror No. 5 and even questioned him outside the presence of the rest of the jurors about his behavior.  It was reasonable for defense counsel to conclude that the court was unlikely to reverse its decision to allow the juror to remain.

Jones, therefore, has not shown that the state appellate court's decision denying his ineffective- assistance claim was contrary to, or an unreasonable application of, *Strickland*.  I recommend that the Court deny Jones' second ground for relief as meritless.

### C.    Ground Three: *Insufficiency of the Evidence*

For his third ground for relief, Jones claims his convictions were not supported by sufficient evidence.  ECF Doc. No. 1-2 at Page ID# 11.  He argues:

> The State presented surveillance video and witnesses that did not establish Mr. Jones's identity [*sic*].  The state witnesses were not able to positively identify Mr. [J]ones as the gunman, and the state witness J.T. Moore testified [*sic*] that he did not see who done the shooting, but only heard gun shots like all the other

witnesses. Viewing this evidence in a light most favorable to the prosecution, no smoking gun connects Mr. Jones to a crime, and no rational trier of fact could have found, beyond a reasonable doubt Mr. Jones was the suspect an essential element for each of his convictions. The testimony of J.T. Moore was inherently unreliable, and the state's convictions were based upon insufficient evidence presented.

ECF Doc. No. 1-2 at Page ID# 11-12. Respondent contends this claim is groundless. ECF Doc.

No. 7 at Page ID# 160-67.

In rejecting this claim, the state court of appeals stated:

{¶ 43} In reviewing a sufficiency of the evidence claim, we are required to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St .3d 89, 102, fn. 4, 684 N.E.2d 668 (1997).

{¶ 44} "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781. 61 L.Ed.2d 560 (1979).

{¶ 45} In his brief, appellant asserts that Moore's identification of appellant as the shooter is flawed and does not constitute sufficient evidence to support the convictions. Appellant contends that Moore's testimony is unreliable because Moore admitted he would do "whatever it takes" not to go back to prison for the rest of his life. Appellant further asserts that no other witness called by the state was able to positively identify appellant as the gunman and that no DNA evidence or gunshot residue tied appellant to the crime.

{¶ 46} Codefendant Moore testified that he, appellant, and codefendant Jennings were at the Moody Manor the night of the shooting. Moore identified himself and his codefendants on surveillance video. While Moore did not see the shooting at the Moody Manor, he indicated that he knew a shooting occurred and who was responsible for the shooting:

Q. * * * Did you know there was a shooting in the Moody Manor on the night of August the 9th?

A. Yeah.

Q. Did you know who did the shooting?

A. Yeah.

Q. And who did the shooting?

A. Keshawn [Jennings] and Antwaine [Jones].

{¶ 47} Moore further testified that moments before the shooting he walked to a van he and Jennings were riding in earlier that day. Appellant and Jennings walked the opposite direction, toward the area of the shooting. Appellant and Jennings both had guns in their possession. Moore drove the van around the corner to wait for appellant and Jennings.

{¶ 48} At the time, Moore thought his codefendants were going to apartment 2217 because "there was a Crip in it." While in the van, Moore heard gunfire. Moments after the shooting, Moore picked appellant and codefendant Jennings up in the van. Moore asked Jennings one question when he got into the van:

A. I asked him what house did they shoot.

Q. Okay. Now, why did you ask him what house did they shoot?

A. Because I seen them coming from the back of the house.

Q. You saw them coming from the back of which house, if you know?

A. 2225.

Q. All right. Did you believe at that time that they shot the wrong house?

A. Yeah. I knew it.

{¶ 49} Moore's testimony, if believed, clearly implicates appellant in the shooting. It is the duty of the jury as trier of fact to resolve conflicts in testimony and

determine the credibility of witnesses who testified. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). In assessing Moore's credibility, the jury was made aware of his possible motive for testifying: that in exchange for his testimony against his codefendants, Moore would receive no more than three years imprisonment.

{¶ 50} Viewing the evidence in a light most favorable to the state, we conclude there was sufficient evidence to support appellant's identification and conviction. Appellant's fourth assignment of error is not well-taken.

*Jones*, 2015-Ohio-629, ¶¶ 43-50.

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). When reviewing a claim of insufficient evidence, habeas courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Petitioner's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient

evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The circuit court has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Jones has not met this burden. He presents virtually the same arguments here as he did in state court. And as the state appellate court explained, even without a "smoking gun," there was ample evidence to support the identification of Jones as the shooter and to support his convictions. Jones provides no evidence or legal argument to refute the state court's analysis.

Among other things, Jones complains that his conviction was based only on circumstantial evidence, but it is well established that a court may sustain a conviction based upon nothing more than circumstantial evidence. *See, e.g., United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."); *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994) (same). The Supreme Court has explained that circumstantial evidence is "intrinsically no different from testimonial evidence;" both "may in some cases point to a wholly incorrect result." *Holland v. United States*, 348 U.S. 121, 137 (1954). Yet, it continued, "[i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Id*. at 137-38. To accomplish this, "the jury must use its experience with people and events in

weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." *Id*. at 138.

The jury here rationally found Jones guilty of the crimes with which he was charged, and the state appellate court rationally found that conviction supported by sufficient evidence. Because Jones has not demonstrated that the state court's decision rejecting his insufficiency claim contravened or misapplied *Jackson* or constituted an unreasonable determination of the facts, I recommend that the Court deny Jones' third ground for relief.

### D.    Ground Four: *Transferred Intent*

Jones' fourth ground for relief asserts that the trial court erred in denying his motion for judgment of acquittal under Ohio Criminal Procedure Rule 29, because "the State fail[ed] to show transferred intent that was required, and [he] was arrested without probable cause or warrant for indictment." ECF Doc. No. 1-2 at Page ID# 12. Jones appears to challenge: (1) the indictment, which he claims did not provide notice of the element of transferred intent for the aggravated-murder charge; (2) the sufficiency of evidence of "probable cause" to sustain Jones' arrest; and (3) the sufficiency of the evidence supporting his "culpable mental state" necessary for a conviction of aggravated murder and his identification as the shooter.[7] ECF Doc. No. 1-2 at Page ID# 12; ECF Doc. No. 12 at 2427-29.

---

[7] In his discussion of this claim in his traverse, Jones also appears to argue that the difference between the jury instructions on transferred intent relating to the aggravated murder charge versus the felonious assault charge confused the jurors. ECF Doc. No. 12 at Page ID# 2428. District courts may decline to address a habeas claim first presented in a petitioner's traverse rather than his petition. *See, e.g., Taylor v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). But even if the claim had been properly presented, it would fail. Errors in jury instructions generally are not federal constitutional violations. Indeed, "the circumstances that would induce a federal court to overturn the state court determination" regarding a requested jury instruction "would need to be extraordinary." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990). Federal habeas courts must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Jones has not shown that the jury instructions on

The state appellate court, in addressing this claim, reasoned:

{¶ 52} Appellant asserts that the trial court erred in overruling his Civ.R. 29 motion for judgment of acquittal because "the State has failed in its attempt to show that the offenses committed in the indictment were a product of transferred intent as relates to the shooting of a Crip, specifically the aggravated murder."

{¶ 53} Civ.R. 29(A) provides:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 54} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper analysis under a sufficiency of the evidence standard is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus, 574 N.E.2d 492. In order to affirm the denial of a Crim.R. 29 motion, we need only find that there was legally sufficient evidence to sustain the guilty verdict. *Thompkins* at 386.

{¶ 55} The jury in this case received a complicity instruction. Complicity may be proven through evidence that an individual "acting with the kind of culpability required for the commission of an offense," aids or abets another in committing the offense. R.C. 2923.03(A)(2). Complicity requires a showing "that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Evidence of aiding and abetting may be demonstrated by both direct and circumstantial evidence. *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981). Criminal intent may be inferred from an individual's presence,

---

transferred intent were improper in any respect, much less that their use rendered his trial fundamentally unfair.

companionship, and conduct before and after an offense. *Id. See also State v. Jackson*, 10th Dist. Franklin No. 03AP–273, 2003–Ohio–5946, ¶ 3234. For the reasons set forth under appellant's fourth assignment of error, we find appellant's fifth assignment of error not well-taken.

*Jones*, 2015-Ohio-629, ¶¶ 52-55.

### 1.    **Defective Indictment**

To the extent Jones complains that the indictment was defective, this claim is not cognizable on federal habeas review.  It is well settled that there is no federal constitutional right to an indictment in state criminal proceedings.  *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *Branznburg v. Hayes*, 408 U.S. 665 (1972)).  Indeed, "the Constitution does not require any particular state indictment rule.  In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner."  *Id*.  Fair notice has been given when "the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial."  *Id*.  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986) ("The indictment here had sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense. Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding.")).

The indictment here clearly stated the essential elements of the crimes under Ohio law and made sufficient factual allegations to apprise Jones of the charges he faced.  *See* ECF Doc. No. 7-1 at Page ID# 192-200.  Jones offers nothing beyond his own conclusory arguments to establish that he truly did not understand the basis for the aggravated murder charge or any of the

other offenses, or that the alleged lack of notice about the charges undermined his defense in any respect. Thus, the constitutional requirement of fair notice was satisfied, and any defective-indictment claim Jones asserts is not cognizable. *See Williams v. Haviland*, 467 F.3d 527, 535–36 (6th Cir. 2006) ("Although the exact *mens rea* requirements were not stated in the indictment, the indictment precisely stated the offenses with which Williams was charged so that there could be no confusion on this point."). Nor has Jones offered any evidence of fundamentally unfairness arising from the form of the indictment such that he was denied due process.

2. **Probable Cause to Arrest**

In Ground Four's heading, Jones makes the related claim that the State lacked probable cause to arrest him. ECF Doc. No. 1-2 at Page ID# 12. But he provides no argument explaining the exact nature of that claim or citation to any clearly established federal law he claims the State violated. Liberally construing Jones' petition, he seems to imply that there was insufficient evidence upon which to find probable cause for his arrest because the indictment charged him with "purposely kill[ing] a person under the age of 13" and "attempting to kill a man that is unknown," but "mention[ed] nothing of transferred intent . . . ." ECF Doc. No. 12 at Page ID# 2428-29. Respondent argues this claim is not cognizable on habeas because it is an issue of state law. ECF Doc. No. 7 at Page ID# 160. I agree that this claim fails, but for a different reason.

Probable cause for an indictment exits when a grand jury returns a facially proper indictment. *See, e.g., Higgason v. Stephens*, 288 F.3d 868, 876-77 (6th Cir. 2002). The Supreme Court has observed,

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . .

*United States v. Calandra*, 414 U.S. 338, 344-45 (1974). The Sixth Circuit further has explained,

> Plaintiff's due process allegation comes down to a claim he was indicted without probable cause. However, it has long been settled that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."

*Higgason,* 288 F.3d at 876-77 (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)).

As discussed above, Jones' indictment was facially fair under Ohio law. The return of the indictment, therefore, establishes that there was probable cause for the indictment and resulting arrest, and Jones has not alleged a violation of any clearly established federal law. *Compare Vasquez v. Hillery*, 474 U.S. 254, 264 (1986) (holding that a judge's systemic exclusion of racial minorities from the grand jury compelled the dismissal of the indictment). This claim, therefore, lacks merit. *See Blalock v. Wilson*, 320 Fed. Appx. 396, 415 (6th Cir. 2009) (denying petitioner's habeas claim that indictment named four codefendants without having probable cause that any one of them specifically committed the murder because petitioner failed to establish a violation of clearly established federal law).

### 3. Sufficiency of the Evidence

Finally, Jones claims in Ground Four that there was insufficient evidence regarding his "culpable mental state" necessary for a conviction of aggravated murder and his identification as the shooter. As explained above, this claim lacks merit.

I recommend that the Court deny Jones' fourth ground for relief as either non-cognizable on habeas corpus review or meritless.

### E. Ground Five: *Manifest Weight of the Evidence*

Jones' fifth ground for relief asserts that his convictions were against the manifest weight of the evidence. ECF Doc. No. 1-2 at Page ID# 12-13. It is well-settled, however, that claims

regarding the manifest weight of the evidence are state law-based claims that cannot be reviewed in a federal habeas proceeding. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilty beyond a reasonable doubt). Jones' Ground Five, therefore, is not cognizable on federal habeas review, and I recommend that the court dismiss the claim.

### F. Ground Six: *Double Jeopardy / Allied Offenses*

Jones' sixth ground for relief asserts that his convictions on all charges were allied offenses of similar import, requiring the conclusion that his multiple sentences thereon violated the Double Jeopardy Clause. ECF Doc. No. 1-2 at Page ID# 13. His entire argument is this: "All counts were subject to merger under one act, or state of mind. There was no separate animus, under a single act, the offenses were not disparate." ECF Doc. No. 1-2 at Page ID# 13. Respondent argues that this claim is not cognizable on federal habeas corpus review. ECF Doc. No. 7 at Page ID# 167-71.

The state court of appeals, in addressing this claim, opined:

{¶ 71} Next, we turn to appellant's contention that the trial court erred at sentencing by failing to merge all of the offenses as allied offenses of similar import.

{¶ 72} As set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the test for whether offenses are allied offenses of similar import under R.C. 2941.25 is two-fold. First, the court must determine "whether it is possible to commit one offense and commit the other with the same conduct." (Emphasis sic.) *Id*. at ¶ 48. Second, the court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50.

{¶ 73} At sentencing, the court examined the merger issue and found that merger was appropriate as to the convictions for aggravated murder, murder, and improperly discharging a firearm at or into a habitation. However, the court refused to merge the remaining counts. In his appellate brief, appellant argues that all of the offenses committed in this case were carried out through a single act involving a single animus. As such, appellant argues that the trial court should have merged the offenses at sentencing. For its part, the state acknowledges that the non-merged offenses (felonious assault and attempted murder) are capable of being committed by a single act. Nonetheless, the state urges that the offenses were not committed with a single animus since they involved multiple victims. We agree.

{¶ 74} In *State v. Mitchell*, 6th Dist. Erie No. E–09–064, 2011–Ohio–973, we held that offenses committed against different victims during the same course of conduct are committed with a separate animus for each offense. In that case, Mitchell was found guilty of three counts of complicity to felonious assault, one count of complicity to improperly discharging a firearm at or into a habitation, one count of complicity to improperly handling firearms in a motor vehicle, one count of complicity to having a weapon while under disability, and one count of complicity to carrying a concealed weapon. Mitchell's convictions stemmed from an incident involving his discharge of a firearm into a habitation in which children were sleeping at the time. On appeal, Mitchell argued that the offenses should merge as allied offenses of similar import. In evaluating Mitchell's merger arguments, we began by noting that the offenses placed more than one person at risk of serious harm. *Id*. at ¶ 42. Thus, concerning the convictions for complicity to felonious assault, we stated that "crimes against each victim are of dissimilar import with separate animus." *Id*.; *see also State v. Ruby*, 6th Dist. Sandusky No. S–10–028, 2011–Ohio–4864 (no merger of two counts of attempted murder where the offenses were committed against two victims); *State v. Swiergosz*, 6th Dist. Lucas No. L–12–1293, 2013–Ohio–4625 (refusing to merge multiple kidnapping convictions where each conviction was tied to a different victim); *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012–Ohio–1192, ¶ 93 (concluding that attempted murder does not merge with murder where the defendant intended to shoot one person but accidentally shot another); *State v. Young*, 2d Dist. Montgomery No. 23642, 2011–Ohio–747, ¶ 39 (finding that "separate convictions and sentences are permitted when a defendant's conduct results in multiple victims").

{¶ 75} Similar to the facts in Mitchell, the case sub judice involves multiple offenses and multiple victims. In addition to the merged offenses, appellant was found guilty of four counts of felonious assault. The victims of these offenses were named at sentencing as follows: L.H., Nai'Reese Hamilton, Naomi Reed, and

Tamatha Pride. Further, appellant was found guilty of attempted murder, relating to appellant's failed attempt to murder a rival gang member. Because this case involves multiple victims who were placed into harm's way when appellant and his codefendants fired 16 shots into an occupied residence, we find no merit to appellant's contention that the offenses were committed as a single act with a single animus. Thus, we conclude that the trial court did not err in failing to merge the convictions for felonious assault and attempted murder.

*Jones*, 2015-Ohio-629, ¶¶ 71-75.

Challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus proceedings. *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003). However, "[t]he Double Jeopardy Clause protects against . . . multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (internal quotation marks and citations omitted).

This multiple-punishments prohibition applies "when the state legislature does not intend for the punishments to be cumulative." *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citing *Albernaz v. United States*, 450 U.S. 333, 334 (1981)). "In other words, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id*. (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Thus, "[w]hen two different statutory provisions authorize punishment for the same act, '[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes.'" *Id*. (quoting *United States v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)). "'[I]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end.'" *Id*. at 697 (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8 (1984)).

When assessing a state legislature's intent, federal courts are bound by the state courts' construction of their own statutes. *Id.* For purposes of double jeopardy analysis, therefore, "'when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent.'" *Id.* (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.1989) and citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)). In Ohio, to determine the legislature's intent regarding allied offenses, courts apply Ohio Rev. Code § 2941.25 (Ohio's merger statute). *Id.*

Here, Jones argues that all offenses for which he was convicted were committed with a single act of shooting and with a single animus, and therefore should have been merged. ECF Doc. No. 1-2 at Page ID# 13. As the state appellate court noted, the trial court did merge Jones' convictions for aggravated murder, murder, and improperly discharging a firearm at or into a habitation. *Jones*, 2015-Ohio-629, ¶ 73. But the court of appeals found that because the crimes of felonious assault and attempted murder involved "multiple victims who were placed into harm's way when [Jones] and his codefendants fired 16 shots into an occupied residence," they were of dissimilar import with separate animus under § 2941.25. *Id.* at ¶ 75. Indeed, the court explained that Ohio courts consistently have construed § 2941.25 to permit separate convictions and sentences when a defendant's conduct harms multiple victims. *Id.* at ¶ 74.

Thus, the state appellate court applied Ohio's allied-offenses statute consistent with Ohio law, and this court ire obligated to defer to the Ohio Court of Appeals' determination that Jones' felonious assault and attempted murder charges were not allied offenses subject to merger. *See Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014) ("With the focus correctly on what the Ohio Court of Appeals actually *did* in this matter—it discerned the Ohio legislature's intent by

applying Ohio's allied offenses statute—there can be no doubt that its decision falls outside §
2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering Jackson
ineligible for relief.").

Because Ground Six is not cognizable in a federal habeas proceeding, I recommend that
it be dismissed..

### G.     Ground Seven: *Prosecutorial Misconduct / Jennings' Recorded Statement*

Jones' seventh ground for relief asserts that the prosecutor improperly played a recorded
statement of his codefendant Jennings describing Jennings' past gang activity and gunshot
wounds for the jury, which the trial court had previously suppressed.  ECF Doc. No. 1-2 at Page
ID# 13.

The state appellate court rejected this claim, stating:

{¶ 78} Here, appellant argues that the prosecutor committed misconduct by
playing approximately five minutes of a recording of Jennings' statement to the
police. The trial court had previously suppressed the portion of the recording
because the recording included statements Jennings made before he was read his
rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). Appellant asserts he was prejudiced when the state played the unredacted
recording.

{¶ 79} The test for prosecutorial misconduct is whether the conduct was improper
and, if so, whether the conduct prejudicially affected substantial rights of the
accused. *State v. Eley*, 77 Ohio St.3d 174, 187, 672 N.E.2d 640 (1996). A new trial
is warranted only upon findings that the prosecutor acted culpably and that those
"acts detrimentally affected the fairness of the proceedings." *State v. Winters*, 6th
Dist. Lucas No. L–121041, 2013–Ohio–2370, ¶ 68.

{¶ 80} The statements that were played concerned Jennings being shot at least four
times prior to the events of August 9, 2012. The statements revealed that Omar, a
friend of Jennings, had been shot and killed at the same time and that the Crips
had something to do with that shooting. The recording also depicted Jennings
lifting his shirt and showing his tattoos and scars to the detectives.

{¶ 81} Upon examination of the entire record we cannot find that appellant was denied a fair trial as a result of the unredacted statements. Throughout the trial, other evidence was admitted regarding previous shootings, gang violence, and gang affiliation. Furthermore, the jury was instructed to disregard the statements. Thus, any misconduct of the prosecutor was not prejudicial to the appellant.

*Jones*, 2015-Ohio-629, ¶¶ 78-81.

The Supreme Court set forth the standard for claims of prosecutorial misconduct in *Darden v. Wainwright*, 477 U.S. 168 (1986). It held that to prevail on such claims, "it is not enough that the prosecutors' [conduct was] undesirable or even universally condemned." *Id*. at 181 (internal quotation marks and citation omitted). Rather, "'[t]he relevant question is whether the prosecutors' [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations . . . .'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Courts may consider: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).

Aside from conclusory assertions, Jones offers no evidence or legal argument to support this claim. Nor does Jones refute the state appellate court's analysis in any respect. As the state

court reasonably concluded, the admission of the Jennings' recorded statement did not prejudice Jones as it only revealed information that was cumulative to other evidence adduced at trial about previous shootings, gang violence, and gang affiliation. *Jones*, 2015-Ohio-629, ¶ 81. Moreover, the trial court instructed the jury to disregard the evidence; and it is presumed the jury followed such an instruction. *See, e.g., Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instruction, . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."). Thus, Jones has not shown, and the record does not demonstrate, that Jennings' unredacted statement "so infected the trial with unfairness" that his conviction resulted in a denial of due process. *Darden*, 477 U.S. at 181.

Because the Ohio Court of Appeals decision on this issue neither contravened nor misapplied *Darden* or its progeny, Jones' seventh ground for relief lacks merit and should be dismissed.

### H.     Ground Eight:  *Prosecutorial Misconduct / Offering False Testimony*

Jones' eighth ground for relief claims that prosecutors knowingly offered perjured testimony.  ECF Doc. No. 1-2 at Page ID# 13.  His entire argument in support of this claim is that his codefendant Moore offered "perjured testimony" and "admitted that he lied on various occasions," and the "prosecution fail[ed] to correct testimony such as when Detective Quinn stated on the record he had witness statements in regards to the identification of subjects on the video."  ECF Doc. No. 1-2 at Page ID# 13.

In addressing this claim, the state appellate court reasoned:

{¶ 83} Appellant argues that Moore offered perjured testimony and that the state was aware his testimony was false. "The knowing use of false or perjured

41

testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001), citing *U.S. v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). "The burden is on the [appellant] to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *State v. Widmer*, 12th Dist. Warren No. CA2012–02–008, 2013–Ohio–62, ¶ 38. The fact that a witness contradicts himself or changes his story does not establish perjury. *Id*. at ¶ 41.

{¶ 84} When Moore took the stand, he admitted that he lied to detectives early in the investigation. There is no evidence that Moore's testimony at trial was false. Rather, review of surveillance camera footage corroborates his trial testimony. Thus, even if Moore's trial testimony was perjured, there is no evidence that the state knowingly used false testimony to convict appellant. Appellant's ninth assignment of error is not well-taken.

*Jones*, 2015-Ohio-629, ¶¶ 83-84.

The Supreme Court has long recognized that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citing, among other cases, *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (stating that due process is denied where "[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured")). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue,* 360 U.S. at 269 (citations omitted). *See also Giglio v. United States*, 405 U.S. 150, 153 (1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'").

A new trial is not "automatically require[d]," however, "whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not

likely to have changed the verdict . . . .'" *Giglio*, 405 U.S. at 153 (citation omitted).  Rather, to establish prosecutorial misconduct and a denial of due process through the knowing use of false testimony, the testimony at issue must have been "material" under *Brady v. Maryland*, 373 U.S. 83 (1963), which established the standard for prosecutorial-misconduct claims based on the withholding of exculpatory evidence.  *Id.* at 154.  A new trial is required only when "'the false testimony could  . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Id.* (quoting *Napue*, 360 U.S. at 271).  *See also Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (to prevail on *Napue/Giglio* claims, defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false).

In this case, as the state court concluded, Jones has not established that Moore's testimony was false.  Respondent correctly argues, "contrary to Jones's understanding, Moore's admission that he 'lied a bunch of times to a lot of people during this investigation' but that he was telling the truth during the trial does not equate to 'perjury' on the stand.  ECF Doc. No. 7 at Page ID# 178 (citing ECF Doc. No. 8-4 at Page ID# 1084).  There is simply no evidentiary basis for a claim that the prosecution knowingly permitted the presentation of false testimony if there is no evidence that the testimony at issue was false.  *Coe*, 161 F.3d at 343.

Because Jones has not pointed to any evidence in the record to support his conclusion that the trial testimony of Witness Moore was false or otherwise demonstrated that the Ohio Court of Appeals decision was contrary to, or an unreasonable application of, *Napue*, *Giglio* or any other Supreme Court precedent, I recommend that the Court deny Jones' eighth ground for relief as meritless.

## I.    Ground Nine: *Trial-Court Error / Prosecutor's File*

Jones' ninth ground for relief asserts that the trial court erred when it denied his motion to

have a complete copy of the prosecutor's file provided to the court and sealed for appellate

review.  ECF Doc. No. 1-2 at Page ID# 13-14.  He explains:

> The prosecutor's file is necessary to determine whether the State has complied
> with defense counsel's requests for disclosure that were filed at the trial court level.
> The failure of the trial court to grant the motion resulted in information not being
> before Mr. Jone's [*sic*] Court procedures.  It is well settled that a motion for an
> order directing a complete copy of the prosecutor's file must be turned over to the
> court for review and to be sealed for appellate review when the obligation to
> divulge exculpatory evidence as the rules states.

ECF Doc. No. 1-2 at Page ID# 13-14.  Respondent correctly argues this claim is not cognizable

on habeas.  ECF Doc. No. 7 at Page ID# 178.

The Ohio Court of Appeals overruled this claim, stating:

> {¶ 86} In his tenth assignment of error, appellant argues that the trial court erred
> in denying his pretrial "motion for an order directing that a complete copy of the
> prosecutor's file be made and turned over to the court for review and to be sealed
> for appellate review, if necessary."  In his motion, appellant requested that a
> complete copy of the state's file be made, reviewed by the trial court prior to trial,
> and sealed for appellate review if necessary. The trial court denied this motion,
> reasoning that Crim.R. 16(B)(5) sufficiently safeguarded against withholding of
> exculpatory evidence by the state.

> {¶ 87} Trial courts are not "required to examine the prosecutor's file to determine
> the prosecutor's truthfulness or seal the prosecutor's file for purposes of appellate
> review." *State v. Hanna*, 95 Ohio St.3d 285, 2002–Ohio–2221, 767 N.E.2d 678, ¶
> 60, citing *State v. Chinn*, 85 Ohio St.3d 548, 569, 709 N.E.2d 1166 (1999); *State
> v. Williams*, 73 Ohio St.3d 153, 172, 652 N.E.2d 721 (1995). Thus, we find that
> the trial court did not err when it denied appellant's "motion for an order directing
> that a complete copy of the prosecutor's file be made and turned over to the court
> for review and to be sealed for appellate review, if necessary." Furthermore, in this
> case, the state was fully aware of its continuing obligation to divulge exculpatory
> evidence, as evidenced by its memorandum in opposition to the motion wherein it
> stated that "counsel for the State is well aware of the legal responsibilities placed

upon it by the Ohio Revised Code, the Ohio Rules of Criminal Procedure, and the Constitutions of the State of Ohio and the United States of America." Having fully reviewed the record, we find that the state complied with its disclosure obligations under Crim.R. 16. Moreover, we conclude that appellant's implication that the state may have withheld exculpatory evidence from defense counsel is purely speculative. Indeed, appellant pointed to no such evidence in his memorandum in support of the motion, and cites no such evidence before this court on appeal.

*Jones*, 2015-Ohio-629, ¶¶ 86-87.

Based on the record before the Ohio Court of Appeals and this court, this claim concerns only a question of state law regarding discovery obligations in criminal trials. Jones does not allege, and there is no plausible argument that the claim implicates a violation of "the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. Had Jones pointed to some particular piece of exculpatory evidence and shown the state failed to produce it in discovery, a different, potential federal constitutional issue could have been involved. But Jones has not done so. As noted in the court of appeals opinion, Jones' entire argument speculates that exculpatory evidence *could* have been in the prosecutor's file and *might* not have been produced. Such speculation raises no valid constitutional claim. Jones also has not shown any fundamental unfairness resulting from the court's ruling on this issue. I recommend that the Court dismiss Jones' ninth ground for relief as not cognizable on federal habeas review.

### J.     Ground Ten:  *Cumulative Error*

Jones' tenth ground for relief asserts that the trial court violated his due process rights through the cumulative effect of its alleged cumulative errors. ECF Doc. No. 1-2 at Page ID# 14. He does not specify the errors. In any event, the Sixth Circuit has held that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). I

recommend, therefore, that the Court dismiss Ground Ten as not cognizable on federal habeas review.

### K.    Ground Eleven:  *Trial-Court Error / Venue and Severance*

Jones' eleventh ground for relief challenges the trial court's denial of his motion to change venue and motion to sever his trial from that of his codefendants. ECF Doc. No. 1-2 at Page ID# 14. As to the court's refusal to sever the trial, Jones cites his codefendant's "conflicting antagonistic defenses," "obvious perjury statement," and "inadmissible evidence as well as irrelevant evidences, all to [his] prejudice . . . ." ECF Doc. No. 1-2 at Page ID# 14. He also claims he was prejudiced by being tried "with a self-admitted gangster." ECF Doc. No. 12 at Page ID# 2429. Jones presents no argument at all about the motion to change venue.[8] Respondent contends the claim has no merit. ECF Doc. No. 7 at Page ID# 182-88.

The state appellate court, in denying this claim, stated:

{¶ 95} The first argument involves the trial court's failure to sever appellant's trial from that of his codefendant, Keshawn Jennings.

{¶ 96} In order to obtain a severance, a defendant must affirmatively demonstrate prejudice by the joinder. Crim.R. 14. To prevail on a severance argument on appeal, the appellant must show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *State v. Allen*, 5th Dist. Delaware No.2009–CA–13, 2010–Ohio–4644, ¶ 57. (Citations omitted .)

{¶ 97} Here, appellant asserts the denial of severance "resulted in a firestorm of perjured testimony, condemning evidence, objections, and denial of objections."

---

[8] Jones also makes a cursory reference to an ineffective-assistance claim in explaining this ground for relief, stating: "Trial counsel fail [*sic*] to renew the motion to severance insuch [*sic*] allowing ineffective assistance." ECF Doc. No. 1-2 at PageID# 14. Jones does not provide any legal or factual argumentation for this claim, however, in either his petition or traverse, and the undersigned will not address it. *See United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011) ("Because there is no developed argumentation in these claims, the panel declines to address [the defendant's] general assertions of misconduct in witness questioning and closing statements."); *Erwin v. Edwards*, 22 F. Appx 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, . . . it . . . does not require a court to conjure allegations on a litigant's behalf . . . .") (internal citations omitted).

However, he does not point to specific examples of actual prejudice caused by the trial court's failure to sever. Thus, the trial court did not err when it elected not to sever appellant's trial from that of his codefendant.

{¶ 98} The second argument involves the trial court's failure to grant appellant's May 6, 2013 motion for change of venue. In that motion, trial counsel argued appellant could not receive a fair trial in Lucas County because the jury pool would be tainted by the extensive media coverage of the shooting and local gang violence. The trial court denied the motion.

{¶ 99} The determination whether or not to order a change in venue lies within the sound discretion of the trial court. *State v. Gumm*, 73 Ohio St.3d 413, 430, 653 N.E.2d 253 (1995). Thus, absent an abuse of the trial court's discretion, an appellate court must not substitute its judgment for that of the trial court in ruling on a motion for change of venue. *Id*.

{¶ 100} Ohio courts have long held that the voir dire process provides the best evaluation as to whether prejudice exists among community members that precludes a defendant from receiving a fair trial. *State v. Swiger*, 5 Ohio St.2d 151, 214 N.E.2d 417 (1966), paragraph one of the syllabus. Further, an appellant claiming that "pretrial publicity" has denied him a fair trial must show that one or more of the jurors were actually biased. *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001).

{¶ 101} We have reviewed the record of the voir dire and find no error in the trial court's ruling on the motion for change of venue. In selecting a jury for appellant's trial, 121 potential jurors were summoned; over 70 were interviewed in chambers. Appellant fails to point to any juror that was permitted to remain on the panel which held a bias because of the pretrial media coverage. Further, each empaneled juror swore that he or she could set aside all information previously heard and render a fair and impartial verdict. Thus, the trial court did not err in overruling appellant's motion for change of venue.

*Jones*, 2015-Ohio-629, ¶¶ 95-101.

## 1. Severance of Trial

A trial court's refusal to grant a request for a separate trial generally is a state law issue.

*See, e.g., Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). The Supreme Court has noted that

"improper joinder of defendants does not, in itself, violate the Constitution. Rather, misjoinder

would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). Thus, "[i]n considering whether the denial of severance amounted to an error warranting relief in a habeas proceeding, the issue . . . is not whether the failure to sever . . . was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir.1980)).

To prevail on failure to sever claims, habeas petitioners must demonstrate actual prejudice, not merely the potential for prejudice. *Id*. Moreover, "[a] defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial," or because a codefendant will present "antagonistic defenses." *Standford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001) (citing *Zafiro v. United States*, 506 U.S. 534, 540 (1993), and *United States v. Day*, 789 F.2d 1217, 1224 (6th Cir.1986) (holding that absent some indication that the alleged antagonistic defendants misled or confused the jury, the mere fact that codefendants blame each other does not compel severance)). Instead, "[c]ourts should grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id*. at 458-59 (quoting *Zafiro*, 506 U.S. at 539). Granting or denying severance is within the trial judge's discretion, and a state trial court's alleged abuse of discretion, without more, is not a constitutional violation. *Id*. at 459.

"A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden." *Id*. "As a general rule, joint trials are favored." *Id*.; *see also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (observing that joint

trials avoid inconsistent verdicts and enable a more accurate assessment of relative culpability). Habeas courts presume that jurors follow the trial court's instructions and give each defendant's case separate consideration. *Stanford*, 266 F.3d at 459 (citing *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).

Jones has not met this "very heavy burden." Here, as in state court, he offers only vague and conclusory assertions of prejudice, and points to no evidence of actual prejudice. Moreover, his complaint about his codefendants' "conflicting antagonistic defenses" is insufficient to establish that he was denied a fair trial. *Stanford*, 266 F.3d at 459. As explained above, Jones has identified no evidence supporting his claim regarding perjured testimony. And the state appellate court found that Jennings' testimony regarding his gang membership did not prejudice Jones as other evidence was presented at trial regarding previous shootings, gang violence, and gang affiliation. *Jones*, 2015-Ohio-629, ¶ 81. This claims fails on the merits for want of evidence of prejudice arising from the failure to grant the motion to sever.

2.     **Venue**

Jones has not provided any legal argument or factual support for his claim challenging the trial court's denial of his motion to change venue. Regardless, claims regarding venue are not cognizable on federal habeas review. Although the "vicinage" clause of the Sixth Amendment guarantees the right to be tried by a jury of the district in which the crime has been committed, this right applies only to federal criminal trials, and the Fourteenth Amendment has never been found to have extended the vicinage clause to state criminal trials. *Caudill v. Scott*, 857 F.2d 344, 345–46 (6th Cir. 1988). Even in a federal criminal trial, failure to establish proper venue is not grounds for federal habeas relief, because, "in the absence of any allegation of bad

faith on the part of the Government or prejudice to the defendant, improper venue will not ordinarily result in a 'miscarriage of justice,' and presents no extraordinary need for post-conviction relief." *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) (finding claim of improper venue not cognizable on habeas in context of § 2255 proceeding). Jones' claim challenging the trial court's denial of his motion to change venue, therefore, is not cognizable on habeas review. Furthermore, Jones has not shown a violation of fundamental fairness stemming from the trial court's refusal to change venue.

I recommend that the Court deny Jones' eleventh ground for relief as non-cognizable and/or lacking merit.

## VII.  Certificate of Appealability not Recommended

### A.  Legal Standard

As amended by the AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463

U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.     Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.  I have recommended that most of Jones' claims be dismissed on procedural grounds.

If the court accepts my recommendations, Jones will not be able to show that the Court's rulings on his procedural defaults or his presentation of non-cognizable claims is debatable. Thus, I recommend that a certificate of appealability not be issued on these findings.

## VIII. Recommendation

I recommend that the Court DENY Jones' petition for writ of habeas corpus (ECF Doc. No. 1) in its entirety, because the claims it raises are procedurally defaulted, not cognizable on federal habeas review, and/or lack merit.

Dated: August 23, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).